MATERN LAW GROUP
Matthew J. Matern (SBN 159798)
   mmatern@maternlawgroup.com
Aubry Wand (SBN 281207)
   awand@maternlawgroup.com
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, California 90266
Telephone: (310) 531-1900
Facsimile: (310) 531-1901

Attorneys for Plaintiff Raymond Unutoa,
on behalf of himself and all others
similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| RAYMOND UNUTOA, an individual, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>INTERSTATE HOTELS & RESORTS, INC., a corporation; INTERSTATE HOTELS, LLC, a limited liability company; TODAY'S IV, INC., a California corporation; PETER ZEN, an individual; and DOES 1 through 100, inclusive,<br><br>    Defendants. | Case No.: 2:14−cv−09809−SVW−PJW<br><br>**CLASS ACTION**<br><br>[Assigned to the Honorable Stephen V. Wilson, Courtroom 6]<br><br>**PLAINTIFF RAYMOND UNUTOA'S REPLY IN SUPPORT OF MOTION FOR REMAND**<br><br>Date: March 2, 2015<br>Time: 1:30 p.m.<br>Ctrm: 6<br><br>On removal from California Superior Court for the County of Los Angeles, Case No. BC563943<br><br>Date of Removal: December 23, 2014<br>Complaint filed: November 14, 204 |

## I. Introduction

This Court lacks subject matter jurisdiction to preside over this action because removal was improper under CAFA, as Defendants submitted insufficient and incompetent evidence, and applied baseless assumptions, in an attempt to meet the amount in controversy requirement. Moreover, even if the Court finds removal was initially proper, the local controversy exception to CAFA mandates remand.

## II. Defendants Must Prove By a Preponderance of the Evidence the Amount in Controversy Exceeds Five Million Dollars

The United States Supreme Court recently held in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014), that a removing party must initially file a notice of removal that includes "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* When, as here, "a defendant's assertion that the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* (citing 28 U.S.C. § 1446(c)(2)(B)). Defendants ignore this holding in *Dart*, contending they "need only demonstrate that the amount of controversy plausibly exceeds $5,000,000." Opp. at 9: 2-6. Plaintiff challenged the amount of controversy in his Motion for Remand, and thus, Defendants have the burden of proving by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. The preponderance of the evidence standard means the "defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

*Ibarra v. Manheim Investments, Inc.*, No. 14-56779, __F.3d__, 2015 WL 321659 (9th Cir. Jan. 8, 2015) is particularly instructive on the analysis in which district courts in the Ninth Circuit must engage when determining whether a

-2-

defendant has satisfied the amount in controversy element under CAFA removal after *Dart*. As is the case here, *Ibarra* involved a wage and hour class action initially filed in California state court, but was removed by the defendant employer. *Id.* at *1-2. The Ninth Circuit Court of Appeals held that subsequent to *Dart*, if the plaintiff challenges the defendant's assertion of the amount in controversy in a motion to remand, "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at *3. Applying this standard, it is clear that Defendants have failed to prove by a preponderance of the evidence that the amount in controversy requirement is met.

### A.   Meal and Rest Period Violations

Defendants apply a series of unsubstantiated assumptions to reach a damages assessment of $2,115,298 for both Plaintiff's meal and rest period claims. As a preliminary matter, Defendants contend they are permitted to assume a 100% violation rate in calculating the amount in controversy even though Plaintiff does not allege anywhere in the complaint that there is a 100% violation rate for non-compliant meal and rest periods. The only case Defendants cite in support of this proposition is *Muniz v. Pilot Travel Centers LLC*, No. CIV.S-07-0325 FCD EFB, 2007 WL 1302504 (E.D. Cal. May 1, 2007), which is not persuasive authority because its analysis was implicitly overruled by *Ibarra*.

Defendants next attempt to persuade this Court of the reasonableness of their calculations by assuming "only" one meal and rest period violation per week. The fact that Defendants have applied the same assumptions for both Plaintiff's meal and rest period claims is telling in-it-of-itself. Defendants' obligations under California law to provide meal and rest periods vary depending on the length of

the shift worked.[1] However, Defendants conduct identical analyses for both the meal and rest period claims without even touching on the length of shifts worked during each of the 182,960 workweeks. Defendants submit no evidence that each of these 182,960 workweeks contained a shift of 4 hours or longer (for rest periods) or 5 hours or longer (for meal periods). There are other unstated assumptions that Defendants wholly ignore. For instance, it is possible there were workweeks where the employee worked shift(s) of 6 hours but waived the meal period(s), or even more problematic, workweeks where the employee was on a vacation. Defendants simply do not account for any of these scenarios.

Finally, in examining the necessary evidence an employer must submit, and the reasonableness of the assumptions relied upon in performing a damages assessment, the Ninth Circuit rejected the employer's assumption of meal and rest period violations for every shift. *Ibarra,* 2015 WL 321659 at *4-5. Specifically, the Ninth Circuit recognized that even with allegations of a "pattern and practice" and "an institutionalized unwritten policy that mandates" the denial of meal and rest periods, it does not mean that such violations occurred in each and every shift. *Id.* Here, Defendants' assumptions fail for the same reasons recognized in *Ibarra*. Further, other courts in this district have explicitly rejected assumptions of one meal and rest period violation per week. *See, e.g., Marshall v. G2 Secure Staff*, 2014 U.S. Dist. LEXIS 95620, at * 8-9 (C.D. Cal. July 14, 2014) (finding that the term 'consistently' does not necessarily amount to once per week and defendant's failure to provide support for its assumption of one missed meal and rest period is insufficient to support the amount in controversy requirement); *see also* Declaration of Matthew J. Matern in Support of Plaintiff's Reply, Exh. A (*Del Campo v. Hometown Buffet, Inc.*, No. CV 14-04378-RGK-SHX (C.D. Cal. Aug. 6,

---

[1] California Labor Code § 512 states an employer must provide meal periods to its employees when they work shifts of 5 hours or longer, while IWC Wage Order No. 5-2001 § 12 states an employer must provide rest periods for every 4 hours of work or major fraction thereof.

-4-

2014) (Dkt. 24) (rejecting the unsupported assumption of one meal and rest period violation per week based on similar allegations in the complaint).

### C. Wage Statement Violations

Plaintiff's wage statement claim under California Labor Code § 226 is premised on several theories, including the failure to accurately state all hourly rates and net wages earned, which are derivative of other causes of action, such as Plaintiff's meal and rest period claims. Courts in this district have recognized that if a claim for wage statement violations is based on claims for missed meal and rest periods, which themselves are found to be speculative, then the assumption of a 100% wage statement violation rate is untenable. *See Marshall*, 2014 U.S. Dist. LEXIS 95620, at * 8-9 ("If the calculations for missed meal and rest periods are faulty, then the wage statement violation calculations are also inherently flawed.").

Similarly, because Defendant's meal and rest period damages calculations are flawed, so too are its wage statement calculations. Presumably recognizing this, and in order to reach a damages assessment of $2.5 million, Defendants assume –without any basis in the complaint – that every single pay stub issued to Westin Bonaventure putative class members lists "Westin Bonaventure Hotel & Suites" as the name of the employer. Critically, the complaint only alleges, "For instance, during the CLASS PERIOD, **PLAINTIFF's** pay stubs pay stubs stated "Westin Bonaventure Hotel & Suites," which resulted in substantial confusion to **PLAINTIFF**, because he could not determine from looking at his paystubs the legal entity that was his employer." (emphasis added). Thus, Defendants' assumption is unsupported by the Complaint, and Defendants have not submitted any evidence that all of the pay stubs issued to Westin Bonaventure employees included the same employer name, even though they could have done so.

### D. Waiting Time Penalties

In order to reach a damages assessment of $901,750, Defendants pile the

-5-

following assumptions on top of each other without any factual basis: that (1) every former employee is entitled to the maximum waiting time penalty of 30 days; (2) the average shift of Westin Bonaventure employees is 8 hours; and (3) the average hourly rate for former Westin Bonaventure employees is $15.03. First, there are no allegations in the complaint to justify the assumption that every former Westin Bonaventure employee is entitled to the maximum 30 days of wages. Because this claim is also derivative, the validity of this assumption rests on the validity of Defendants' calculations regarding the underlying claims, which are not delineated by Defendants, thereby rendering it impossible to determine the validity of this assumption. An example best illustrates this point: assume the Court finds that only Defendants' wage statement analysis is valid. The wage statement claim would serve as predicate for waiting time penalties, but only for a statutory period of one year as contended by Defendants. However, in its damages assessment, Defendants flatly assume there are 250 former Westin Bonaventure employees during the entire putative class period.

Second, Plaintiff's Motion for Remand challenged Defendants' assumption that the average shift length is 8 hours. Recognizing they had failed to submit evidence in support of this assumption, Defendants attempt to rectify this through another declaration of Yvonne Mills, in which she states that in her capacity as Payroll Supervisor at the Westin Bonaventure, she has access to the employee database and based on that data she determined "the *majority* of the Bonaventure non-exempt employees are typically scheduled to work 8 hour shifts." Mills Decl. in Support of Opposition ¶ 2 (Dkt. 17) (emphasis added). Tellingly, Mills qualifies her statement with the word "majority," which could mean anything ranging from greater than 50% to less than 100%. However, in their damages assessment, Defendants assume that 100% of the shifts are 8 hour long. Plaintiff need not belabor the logical gap in that assumption. Similarly, Mills states, "Based on the information contained in this report, the average hourly wage for

the 1,289 ***Non-Exempt Bonaventure employees*** during this period was approximately $15.03." Mills Decl. in Support of Removal ¶ 5 (Dkt. 1-4) (emphasis added). Yet Defendants assume, without evidentiary basis, that the hourly rate of $15.03 equally applies to former employees.[2]

The foregoing demonstrates why courts have held that a removing defendant may not assume all putative class members would be entitled to penalties for the maximum statutory period without providing evidence to show this finding is more likely than not. *See*, *e.g.*, *Pereria v. Gate Gourmet Inc.*, 2009 WL 1212802, at *3 (C.D. Cal. April 30, 2009); *see also Carag v. Barnes & Noble, Inc.*, 2014 WL 2446366, at *3 (E.D. Cal. May 309, 2014).

### E. Attorneys' Fees

Courts in this circuit are split as to whether future attorneys' fees can be considered in calculating the amount in controversy. *Compare Dukes v. Twin City Fire Ins. Co.*, 2010 U.S. Dist. LEXIS 3617, *2 (D. Ariz. Jan. 6, 2010) ("attorneys' fees incurred after the date of removal are not properly included because the amount in controversy is to be determined as of the date of removal" and "[f]uture attorneys' fees are entirely speculative, may be avoided, and are therefore not 'in controversy' at the time of removal.") with *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1010-11 ( "an estimate of the amount in controversy… based on facts known at the time of removal" can be included in the amount in controversy). Even assuming future fees can be included, this Court should not give any credit to Defendants' calculations "given the speculative nature of many of [Defendant's] other calculations concerning the amount in controversy." *See Hernandez v. Towne Park, Ltd*, 2012 U.S. Dist. LEXIS 86975, *68-69 (C.D. Cal. June 22, 2012); *Fong v. Regis Corp.*, 2014 U.S. Dist. LEXIS 275, at *9 (N.D. Cal.

---

[2] The hourly rate of current and former employees is likely higher than the hourly rate for only former employees, assuming hourly rates got higher from 2010 to present. However, that is also an unfounded assumption which highlights the flaw in Defendants' damages assessment.

-7-

Jan. 2, 2014) ("Because the estimated attorney fees are premised on [] unconvincing figures, they, too, are unpersuasive."). Here, Defendants' assumption of attorneys' fees ($862,287) is derivative of their damages assessment for Plaintiff's wage statement and waiting time claims – both of which fail for the reasons stated above. In other words, the attorneys' fees figure is an assumption piled upon multiple faulty assumptions and should not be considered in determining whether the amount in controversy requirement is satisfied.

### F. Defendants Chose Not to Submit Competent Evidence

Defendants were well aware of their evidentiary burden under *Ibarra*, having cited this decision throughout their Opposition. Defendants had the opportunity to conduct factual inquiries that would have obviated the need for making groundless assumptions. For instance, instead of assuming an hourly rate of $15.03 for former Westin Bonaventure employees, Defendants could have calculated the ***actual*** average hourly rate for these employees; instead of concealing the specific percentage of shifts over 8 hours, Defendants could have submitted the ***actual*** percentage of shifts over 8 hours; and instead of assuming one meal period violation per week, Defendants could have calculated the ***actual*** number of meal periods that were missed, late, or short in the time records, and then assumed these meal periods were violations based on the allegations. Because Defendants are required to prove by a preponderance of the evidence that the amount in controversy is met, the Court cannot permit Defendants to rely on baseless assumptions, particularly where real evidence could easily have been submitted.

### III. The Local Controversy Exception Mandates Remand

Even if the Court finds that removal was proper under CAFA, the local controversy exception mandates remand to state court. *See* 29 U.S.C. 1332(d)(4)(A). In their Opposition, Defendants do not contest that the third and fourth elements of the local controversy exception – that the principal injuries

-8-

alleged occurred in California and that no other similar class action has been filed against any of the named Defendants in the three years prior to the filing of the complaint – are met.  Thus, Plaintiff only addresses the first two elements.

### A. The Requirement that Two-Thirds of the Putative Class Members Are California Citizens is Satisfied

Defendants contend that Plaintiff has not proven that two-thirds of the putative class members are California citizens as required under the local controversy exception.  Contrary to Defendants' assertion, Plaintiff was not obligated to submit evidence proving this element because the class definition in the complaint excludes non-California citizens, which is defined as: "all current and former non-exempt employees of DEFENDANTS in the State of California at any time within the period beginning four (4) years prior to the filing of this action, and ending at the time this action settles or proceeds to final judgment."  This proposed class consists only of former employees who worked in California and current employees who continue to work in California.

Common sense belies the proposition that two-thirds of this proposed class does not consist of California citizens.[3]  In *Romo v. Panda Restaurant Corp.*, No. CV-12-00996 GAF-OPX, 2012 WL 39303446 at * 4 (C.D. Cal. Sept. 7, 2012), this district court addressed this precise issue and remanded the case under the "home state controversy" exception (which has an identical two-thirds citizenship requirement) on the ground that common sense provided that it was extremely unlikely that more than one third of a class comprised solely of California employees would not be California citizens.  *Id.* at *4; *see also Quesada v. Herb Thyme Farms, Inc.*, 2011 WL 1195952 (C.D. Cal. Mar. 28, 2011) (finding sufficient on its face that the two-thirds requirement was met for "proposed class

---

[3] If the Court were to accept Defendants' argument that a plaintiff must prove intent to remain domiciled of two thirds of the class at this stage of the proceedings the local controversy exception would essentially be rendered moot because a plaintiff could never meet this requirement without first interviewing two-thirds of the proposed class.

limited to purchasers within California"); *Flores v. Chevron Corp.*, 2011 WL 2160420 (C.D. Cal. May 31, 2011) (same); *Haynes v. EMC Mortg. Corp.*, 2010 WL 1445650 (N.D. Cal. Apr. 12, 2010) (finding sufficient on its face that the two-thirds requirement was met for classes defined to include persons who owned real or residential real property in California). Thus, several courts in this circuit have held that classes of California employees, real property owners, and consumers, are presumptively California citizens for the purposes of remand.

### B. Plaintiff Seeks Significant Relief from Defendants Today's IV, Inc. and Peter Zen and the Conduct of these Defendants Constitutes a Significant Basis for Plaintiff's Claims

Defendants rely extensively on *Kearns v. Ford Motor Co.*, No. CV 05-5644, 2005 WL 3967998 (C.D. Cal. Nov. 21, 2005), a district court decision issued shortly after CAFA was enacted in 2005, for the proposition that Plaintiff must establish that a California defendant is liable to the majority of the entire proposed class in order for "significant relief" to be sought against that defendant under the local controversy exception. Defendants ignore the controlling decision on this point, *Coleman v. Estes Express Line, Inc.* (*Coleman II*), 631 F.3d 1010, in which the Ninth Circuit emphatically held that in determining whether significant relief is sought against a defendant, the district court looks solely to what is alleged in the complaint. *Id.* at 1015-1017. Under this standard, the Court cannot look to extrinsic evidence.[4] *Id.* Plaintiff seeks significant relief against Today's IV, Inc. and Peter Zen. Instead of examining the complaint as a whole, Defendants cherry-pick isolated allegations from the complaint to suggest that Today's IV and Peter Zen are only involved with a subset of the case. For instance, Defendants refer to paragraph 8 of the complaint, which alleges that

---

[4] Thus, the Court must disregard an out-of-context email quoted by Defendants, in which Defendants illogically read meaning into the statement "we will consider . . ." that simply is not there.

-10-

**PLAINTIFF RAYMOND UNUTOA'S REPLY IN SUPPORT
OF MOTION FOR REMAND; Case No. 2:14-cv-09809-SVW-PJW**

"Today's IV, is engaged in an agreement with Interstate Hotels & Resorts and Interstate Hotels to manage the Westin Bonaventure Hotel & Suites." However, there is a tremendous logical gap between this allegation and Defendants' strained argument that Plaintiff does not seek significant relief against Today's IV and Peter Zen. In his complaint, Plaintiff brings twelve causes of action against all of the named Defendants. Plaintiff does not assert any theory of liability against Interstate Hotels that are not asserted against Today's IV, Inc., and Peter Zen. The complaint as a whole alleges that all of the named Defendants are jointly liable to all class members for every single cause of action.

Finally, Defendants' own damages assessment undermines their argument. On the one hand, Defendants contend that Plaintiff seeks "at least $8,542,033"on behalf of current and former employees of the Westin Bonaventure in order to meet the amount in controversy exception. In fact, Defendants' entire basis for removal was focused on damages against the Westin Bonaventure. And then on the other hand, Defendants argue that Plaintiff does not seek significant relief against Today's IV, Inc. and Peter Zen, even though Defendants do not contest they are jointly liable with Interstate Hotels as to current and former employees of the Westin Bonaventure hotel. Defendants' inconsistent positions on removal and now remand cannot be reconciled.

## IV.  Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his Motion for Remand.

DATED: February 16, 2015            Respectfully submitted,

                                    MATERN LAW GROUP

                                    By:   /s/ Mathew J. Matern
                                          Matthew J. Matern
                                          Aubry Wand
                                          Attorneys for Plaintiff