1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FILED
CLERK, U.S. DISTRICT COURT

Mar 3, 2015

CENTRAL DISTRICT OF CALIFORNIA
BY: _____PMC_____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND UNUTOA, an individual, on behalf of himself, and all others similarly situated, | CASE NO. 2:14-cv-09809-SVW-PJW |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION TO REMAND [10] AND ORDERING PLAINTIFF TO SHOW CAUSE WHY THIS COURT SHOULD NOT ISSUE SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 |
| v. | |
| INTERSTATE HOTELS AND RESORTS, INC., a corporation; INTERSTATE HOTELS, LLC, a limited liability company; TODAY, IV, INC., a California corporation; PETER ZEN, an individual; and DOES 1–100. | |
| Defendants. | |

## I.   Introduction and Background

This case is a wage and hour putative class action removed from state court pursuant to the Class Action Fairness Act ("CAFA").  Plaintiff Raymond Unutoa ("Unutoa") is a security guard at the Westin Bonaventure Hotel & Suites ("Westin Bonaventure") in Los Angeles, CA. (Compl. ¶ 3.)  He asserts that defendants Interstate Hotels and Resorts, Inc. ("the Corporation"), Interstate Hotels, LLC ("the LLC, collectively with the Corporation, "Interstate"), Today's IV, Inc. ("Today's IV"), and Peter Zen ("Zen") are his employers.  On November 14, 2014, Plaintiff filed suit in state court, asserting twelve causes of action for violations of California Labor Code

provisions,[1] California's Unfair Competition Law ("UCL"), and seeking penalties under the Private Attorney General Act ("PAGA").

On December 23, 2014, Defendants removed the action to this Court pursuant to CAFA. (Dkt. 1.)  Presently before the Court is Plaintiff's motion to remand.  (Dkt. 10.)  For the reasons discussed below, the Court DENIES Plaintiff's motion.

**II.    Legal Standard**

Removal jurisdiction is generally disfavored.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  But it is proper if the case could have been filed in federal court originally.  28 U.S.C. § 1441.

One common basis is the presence of a well-pleaded federal question.  28 U.S.C. § 1331; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  The well-pleaded complaint rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1183 (9th Cir. 2002) (citation and internal quotation marks omitted).

Another basis for subject matter jurisdiction is the parties' diversity of citizenship.  28 U.S.C. § 1332(a).  Diversity jurisdiction exists in "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ."  28 U.S.C. 1332(a).  The amount in controversy is determined from the complaint itself, "unless it appears or is in some way shown that the amount stated in the complaint is not claimed in good faith."  *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961) (citation and internal quotation marks omitted).

Additionally, the Class Action Fairness Act ("CAFA") allows for subject matter jurisdiction over class actions in which the proposed class includes at least 100 members, any member of a plaintiff class is of diverse citizenship from any defendant, and the amount in controversy exceeds $5,000,000.  28 U.S.C. § 1332(d).  CAFA was enacted to facilitate federal

---

[1]  Specifically, Plaintiff asserts that Defendants failed to: (1) provide required meal periods; (2) provide required rest periods; (3) pay overtime wages; (4) pay minimum wages; (5) pay all wages due to discharged and quitting employees; (6) maintain required records; (7) furnish accurate wage statements; (8) indemnify employees for necessary expenses incurred in the discharge of duties; (9) pay reporting time; and (10) pay timely wages.  (Dkt. 1.)

1    courts' adjudication of certain class actions.  *Dart Cherokee Basin Operating Company, LLC v.*

2    *Owens*, 135 S. Ct. 547, 554 (2014).  Thus, "no antiremoval presumption attends cases invoking

3    CAFA."  *Id.*

4         A defendant removing a case on the basis of diversity must file a notice of removal

5    containing a "short and plain statement of the grounds for removal."  *Id.* at at 553 (quoting 28

6    U.S.C. § 1446(a)).  The Supreme Court recently clarified that (at least in a CAFA case) the

7    defendant need not submit evidence supporting this assertion with the notice of removal.  *Id.*

8    However, if the plaintiff contests the defendant's allegations regarding the amount in

9    controversy, then the court must decide by a preponderance of the evidence that the amount in

10   controversy requirement is met.  *Id.* at 553–54 (citing 28 U.S.C. § 1446(c)(2)(b)).  The defendant

11   bears the burden of proving that the amount in controversy requirement is met.  *Id.*; *Ibarra v.*

12   *Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

13        In a pair of contrasting decisions, the Ninth Circuit further clarified the procedure to be

14   followed on a motion for remand.  Where the complaint contains generalized allegations of

15   illegal behavior, a removing defendant must supply "real evidence" grounding any assumptions

16   regarding the rate of statutory violations for purposes of calculating the amount in controversy.

17   *Ibarra*, 775 F.3d at 1199.  While the Ninth Circuit held that both parties are entitled to submit

18   summary-judgment-style evidence regarding the propriety of removal, it declined to decide

19   whether a plaintiff was required to submit evidence refuting the defendant's allegations and

20   evidence of the amount in controversy in order to prevail on a motion to remand.  *Id.* at

21   1199–1200.  The Court noted that the plaintiff contested the defendant's assumed rates of

22   violation but did not "assert an alternative violation rate grounded in real evidence, such as an

23   affidavit by [the plaintiff] asserting how often he was denied meal and rest breaks."  *Id.* at 1199.

24   The Court then remanded the case to the district court with instructions to "set a reasonable

25   procedure . . . so that each side has a fair opportunity to submit proof."  *Id.*

26        In a companion case, the Ninth Circuit found that a court should deny a motion to remand

27   where a defendant calculates the amount in controversy by relying on the clear allegations of the

28   complaint regarding the frequency of violation and potential liability calculations supported by

1   real evidence (such as total class period expenditures extrapolated from evidence of quarterly

2   expenditures for one quarter in the relevant time period). *LaCross v. Knight Transp. Inc.*, 775

3   F.3d 1200, 1202–03 (9th Cir. 2015).

4   **III.    Analysis**

5           **A.    Proof of CAFA Jurisdiction**

6           Plaintiff challenges the propriety of removal by asserting: (1) that Defendants' evidence

7   in support of removal is inadmissible, and (2) that Defendants calculate the amount in

8   controversy by relying on unsupported rates of violation.

9           Plaintiff's evidentiary objections to Defendants' declarations are baseless and thus do not

10  justify remand.  However, Unutoa is correct that Defendants follow the typical pre-*Ibarra*

11  approach of relying on so-called "reasonable" assumed rates of violation based only on evidence

12  regarding the number of class members in the putative class, the number of weeks worked in the

13  relevant time period, and the average wage earned by those persons during that time period.

14          Nevertheless, the complaint at issue here contains more specific allegations than the

15  general "pattern and practice" and "institutionalized unwritten policy that mandates these

16  unlawful practices" alleged in *Ibarra*.  *See Ibarra*, 775 F.3d at 1198.  Unutoa seeks to represent

17  the class of "all current and former non-exempt employees of DEFENDANTS in the state of

18  California" for the period from four years prior to the filing of this suit until its conclusion.

19  (Compl. ¶ 5.)  He asserts that Defendants "often" hold events at which he and the class members

20  are required to work shifts of up to twelve hours straight "without taking a single meal period."

21  (Compl. ¶ 20.)  He also asserts that Defendants have no written policy permitting him or the

22  class to take a second meal period during shifts of ten hours or longer; thus he and class

23  members "did not take second meal period when working shifts of ten hours or more because

24  they did not know they were entitled to take one."  (Compl. ¶ 21.)  Unutoa further asserts that he

25  and class members were required to remain on-call during meal periods  to respond to

26  emergencies and that they "regularly" perform work during their meal periods.  (Compl. ¶ 22.)

27  For example, he asserts that he was required to carry a radio at all times and is not allowed to

28  leave the premises.  (*Id.*)  Unutoa also asserts that when the hotels operate big events, class

1    members are required to work twelve hours straight without any required rest periods.  (Compl. ¶

2    28.)  Moreover, he claims that even outside of these events, class members "are generally so

3    busy that they often do not have time to take rest breaks."  (*Id.*)  Finally, he asserts that class

4    members "regularly" work during rest breaks and are required to remain on-call during these

5    breaks.  (Compl. ¶ 30.)

6            Defendants submit their employee's declaration that the majority of potential class

7    members employed at the Westin Bonaventure (one of seventy hotels at which class members

8    are employed) are typically scheduled for 8 hour shifts.  (Mills Decl. in Supp. Opp. ¶ 2.)  While

9    this evidence indicates that second meals are typically not required, it establishes that most class

10   members are entitled to at least one meal period and at least one rest period during most of their

11   shifts at the Bonaventure.  *See* Cal. Labor Code §§ 226.7, 512.  Moreover, Plaintiff alleges,

12   without qualification, that Defendants did not provide premium pay to class members denied a

13   meal or rest period.  (Compl. ¶¶ 22, 31.)

14           As to his cause of action for failure to furnish accurate, itemized wage statements,

15   Unutoa asserts that Defendants "routinely" failed to provide such wage statements.  (Compl. ¶

16   54.)  For example, "during the CLASS PERIOD, PLAINTIFF's pay stubs stated 'Westin

17   Bonaventure Hotel & Suites,' which resulted in substantial confusion to PLAINTIFF because he

18   could not determine from looking at his paystubs the legal entity that was his employer."

19   (Compl. ¶ 54.)  Taken as true and assuming *arguendo* that such wage statements violate

20   California Labor Code § 226, this suggests that Unutoa experienced a 100% rate of violation.

21           In calculating the amount in controversy, Defendants calculate only the potential amounts

22   owed to class members employed at the Westin Bonaventure, rather than those employed at each

23   of their hotels.  Defendants assume that class members worked 40 out of 52 weeks per year and

24   missed one required meal period per week.  Thus, based on the 182,960 total work weeks in the

25   class period, Defendants assert that the amount in controversy regarding Plaintiff's meal period

26   claim is $2,115,298.  (Dkt. 1: Not. of Removal at 12–14.)  Defendants also assume that class

27   members missed one required rest period per week.  Thus the amount in controversy regarding

28   Plaintiff's rest period claim is also $2,115,298.  Finally, Defendants apparently assume a 100%

1   rate of violation regarding Unutoa's wage statement claim.  Defendants also assert that, based on

2   the 1 year statute of limitation applicable to this claim and their bi-weekly pay periods, no class

3   member reached the statutory maximum penalty.  (*Id.* at 10–11.)  Defendants offer evidence that

4   there were 1,044 initial pay period wage statements and 24, 952 subsequent pay period wage

5   statements issued during the relevant time period.  (*Id.* at 11–12; Mills Decl. ¶ 6.)  Thus the

6   amount in controversy for the wage statement claim is $2,547,400.  In other words, Defendants

7   assert that for only a subset of class members and for only three of Plaintiff's twelve claims, the

8   amount in controversy is $6,777,996.[2]

9          While Defendants' calculation of the amount in controversy relies on assumed rates of

10   violation, these rates are sufficiently supported by Unutoa's allegations and Defendants'

11   evidence.  Removing defendants will inevitably rely on some assumptions to support removal; a

12   removing defendant is not required to go so far as to prove Plaintiff's case for him by proving

13   the actual rates of violation.  *See Oda v. Gucci Am., Inc.*, No. 2:14-CV-07469-SVW, 2015 WL

14   93335, at *5 (C.D. Cal. Jan. 7, 2015).  Moreover, Unutoa does not contest these assumptions'

15   accuracy—instead he only contests the sufficiency of Defendants' evidentiary support.  Notably,

16   Plaintiff fails to assert any different rate of violation or to submit any evidence indicating a

17   contrary rate of violation.  Plaintiff does not even submit his own declaration stating that he

18   experienced less frequent rates of violation than those asserted by Defendants.  In light of the

19   foregoing, the Court should find Defendants' proof of the amount in controversy adequate.  *See*

20   *Roa v. TS Staffing Servs., Inc.*, No. 2:14-CV-08424-ODW, 2015 WL 300413, at *2 (C.D. Cal.

21   Jan. 22, 2015) (finding removal proper where plaintiff did not contest the veracity of defendant's

22   allegations regarding the amount in controversy and instead asserted only that the allegations

23   lacked sufficient evidentiary support).

24          Defendants also adequately establish that the Corporation (a citizen of Virginia and

25   Delaware) is a defendant diverse from Plaintiff (a California citizen).

26          For the aforementioned reasons, the Court FINDS that Defendants adequately prove that

27

28   [2]  In light of this finding, the Court need not address the parties other arguments regarding
     Defendants' calculation of the amount in controversy regarding other claims or attorney fees.

1  this case was properly removed under CAFA.

2     **B.     Mandatory Remand Under Local Controversy Exception**

3         Plaintiff asserts that this Court must remand the action under the local controversy

4  exception to CAFA jurisdiction, 28 U.S.C. § 1332(d)(4)(A).  Under this exception, the Court is

5  required to remand a case in which the injuries resulting from the alleged conduct were incurred

6  in the forum state, greater than 2/3 of the putative class members are citizens of the forum state,

7  and at least one defendant is a defendant from whom "significant relief is sought . . . whose

8  alleged conduct forms a significant basis for the [asserted] claims . . . and who is a citizen of the

9  [forum] state."  28 U.S.C. § 1332(d)(4)(A)(i)–(iii.) Plaintiff bears the burden of proving that

10  these requirements are met.  *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1023 (9th Cir. 2007).

11         Plaintiff fails to submit any proof that 2/3 of the class members (current former

12  employees in California) were California citizens at the time of removal.  Thus Plaintiff's

13  argument fails.  Moreover, Plaintiff fails to submit any evidence indicating that Today's IV or

14  Zen (the two local defendants) engaged in conduct forming a significant basis for his asserted

15  claims.  For the aforementioned reasons, the Court FINDS that the local controversy exception

16  does not require remand.

17     **C.     The Basis for Plaintiff's Class Claims**

18         Though he has only worked at one of Defendants' hotels, Plaintiff seeks to represent a

19  class of former and present employees who worked at any of Interstate's more than 70 California

20  hotels.  (Compl. ¶¶ 3, 5; Hageman Decl. ¶ 4.)  At the hearing held on March 2, 2015, Plaintiff's

21  counsel admitted that he only interviewed five to ten people before filing his claim.  Plaintiff's

22  counsel further admitted that he was unaware whether any of those people worked at any of

23  Defendants' hotels in California aside from the Westin Bonaventure.  At the March 2 hearing,

24  Defendants asserted that there were over 50,000 potential class members.

25         Under Federal Rule of Civil Procedure 11, when an attorney submits a pleading to the

26  Court, he certifies that the factual contentions have evidentiary support.  Fed. R. Civ. Proc. 11.

27  After interviewing 5–10 people who may have all worked at the same hotel as Unutoa, Plaintiff

28  filed a complaint seeking to represent a class spanning 70 hotels and including over 50,000

people.  (Compl. ¶ 5.)  Plaintiff also asserts that his claim is typical of the class.  (Compl. ¶ 16(c)).  The Court is skeptical that Plaintiff's counsel had adequate evidentiary support for this factual contention.  The Court therefore ORDERS Plaintiff to show cause why he should not be sanctioned under Rule 11 for making factual contentions in a pleading without adequate evidentiary support.  Plaintiff shall file his response within fourteen days from this Order's issuance.

**IV.    ORDER**

1.  For the foregoing reasons, the Court DENIES Plaintiff's Motion to Remand.

2.  For the foregoing reasons, the Court ORDERS Plaintiff to show cause why he should not be sanctioned under Rule 11 for making factual contentions without adequate evidentiary support.  Plaintiff shall file his response within 14 days of this Order's issuance.

**IT IS SO ORDERED.**

Dated: March 3, 2015

_____
STEPHEN V. WILSON
United States District Judge